[Cite as *Brim v. Brim*, 2022-Ohio-2596.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| James A. Brim, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 21AP-303 |
| v. | : | (C.P.C. No. 20DR-3727) |
| Erica L. Brim, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 28, 2022

**On brief:** *Joseph & Joseph Co., LPA*, and *S. Kyle Dodderer*, for appellee. **Argued:** *S. Kyle Dodderer*.

**On brief:** *Jeffrey P. Compton*; and *Vincent A. Dugan, Jr.*, for appellant. **Argued:** *Vincent A. Dugan, Jr.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch

KLATT, J.

{¶ 1} Defendant-appellant, Erica L. Brim, appeals from a judgment entry/decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch terminating her marriage to plaintiff-appellee, James A. Brim, dividing the parties' marital property, and awarding no spousal support to either party. Because the trial court abused its discretion in denying appellant's request for a continuance, we reverse the trial court's judgment and remand the case for further proceedings.

{¶ 2} The parties were married on August 17, 2017; no children were born of the marriage. On October 28, 2020, appellee filed a complaint for divorce, along with an

affidavit of property, an affidavit of income and expenses, and other documentation related to the divorce. The affidavit of property stated that the parties owned no real estate and included valuations for both marital and separate assets and liabilities. The affidavit of income and expenses included valuations for the parties' income and monthly expenses.

{¶ 3} In the complaint, appellee listed appellant's address as "[u]nknown." (Oct. 28, 2020 Compl. at 1.) Appellee directed the Franklin County Clerk of Courts to serve appellant by certified mail at an address in Inez, Kentucky. That mail was returned unclaimed. The trial court record reveals no documentation evidencing further attempts by appellee to serve appellant.

{¶ 4} On January 20, 2021, appellee's counsel filed an affidavit for service by publication pursuant to Civ.R. 4.4(A). Counsel identified appellant's last known address as "148 N. Hamilton Rd., #166[,] Gahanna, Ohio 43230." Counsel averred that attempted service on appellant via certified mail was unsuccessful, as were efforts to ascertain her address through voter registration and court docket searches, service to her parents' address, FedEx waiver of service to her alleged residence, and telephone contact with appellant. On March 5, 2021, the Daily Reporter (a newspaper of general circulation in Franklin County) filed an affidavit establishing that it had published notice regarding the instant action each week for six consecutive weeks between January 29 and March 5, 2021. The notice listed the 148 North Hamilton Road address as appellant's last known address and advised that appellant was required to answer the complaint on or before April 2, 2021.

{¶ 5} Appellant did not timely respond to the complaint. Due to the lack of timely response, appellee, on April 26, 2021, filed a "Notice Certificate" requesting that the "uncontested divorce" be assigned for trial on May 19, 2021. Appellee again listed the 148 North Hamilton Road address as appellant's last known address.

{¶ 6} On May 19, 2021, the trial court held a hearing on appellee's complaint for divorce. Appellant appeared at the hearing pro se; appellee was represented by counsel.

{¶ 7} Appellee testified that the affidavit of property he filed with his divorce complaint accurately reflected the parties' assets and liabilities and that he had prepared a judgment entry/decree of divorce which, in his view, equitably divided those assets and liabilities. Appellee presented no further documentation establishing valuation of the parties' assets and liabilities.

**{¶ 8}**  Appellee's counsel then raised with appellee the issue of service of the complaint.  That exchange established that appellee did not know appellant's address at the time he filed the complaint.  At some point, appellant provided appellee with the 148 North Hamilton Road address; however, service to that address was unsuccessful.  Thereafter, after several additional attempts to discover appellant's address failed, appellee submitted the affidavit of service by publication.

**{¶ 9}**  Following this exchange, appellee requested that the trial court adopt his proposed judgment entry/decree of divorce, divide the assets and liabilities as designated therein, and terminate the parties' marriage.

**{¶ 10}**  After appellee completed his testimony, the trial court questioned appellant. Regarding the service issue, appellant testified that the Kentucky address to which appellee sent the certified mail was her parents' residence; she had never lived there.  At some point, appellant became aware that appellee was filing for divorce.  When appellee asked for her address so he could serve her with the divorce complaint, she provided her post office box address of 148 N. Hamilton Road, #166, Gahanna, Ohio.  Appellant did not clarify when any of these events occurred.

**{¶ 11}**  The court then shifted its inquiry to the parties' separation date and appellee's ensuing actions.  In response to this line of questioning, appellant testified that appellee left the marital residence on February 27, 2020 to live with his mother.  He took a few personal items with him, but left the furnishings, household items, and some personal property in the home.  According to appellant, at that point, she did not believe that she and appellee were separated because they had never discussed divorce and appellee repeatedly assured her that the two were "still together."  (May 19, 2021 Tr. at 15.)  However, she ultimately acknowledged that at the time of the hearing, she and appellee had lived separate and apart without cohabitation for more than one year.  Following this acknowledgement, the court noted that such circumstance constitutes grounds for divorce; thus, all that remained for the trial court's determination was the division of assets and liabilities.

**{¶ 12}**  At appellant's request, the trial court permitted her to make a statement.  To that end, appellant alleged that there were multiple problems within the marriage, including that she had contracted a sexually transmitted disease from appellee, that she was the victim of domestic abuse by appellee, and that appellee had substance abuse issues.

{¶ 13} Thereafter, upon appellant's intimation that she had never been properly served with the complaint, the trial court asked her how she knew about the hearing. Appellant replied that she discovered it through accessing the trial court's online docket; however, she did not indicate when she did so. The trial court averred, "[s]o you knew about the divorce, and you never came down to file an answer or a counterclaim or anything." *Id.* at 16. Appellant replied that she did not know how to file an answer.

{¶ 14} The court then questioned appellant about the parties' vehicles. During this inquiry, appellant stated that she was in the process of retaining an attorney named Lindsay Hutchinson. When the court noted that the complaint had been filed in October 2020, appellant explained that her delay in seeking legal representation stemmed from the fact that she had been embroiled in a legal battle with appellee's mother for more than one year which ultimately resulted in her eviction from the marital residence.[1] The trial court then asked, "So are you saying you want to stay married?" *Id.* at 18. Appellant replied, "I understand what you're saying about filing the paperwork; but, again, I do want the opportunity to retain an attorney and to answer - -." *Id.* Before appellant completed her statement, the trial court interjected, "you don't retain an attorney on the day you're scheduled to come in to get your divorce." *Id.* at 18-19. When appellant reiterated that she had been speaking to Ms. Hutchinson about her case, the trial court stated that she should have retained an attorney soon after the complaint was filed in October 2020 and not waited until the day before the hearing to do so. Appellant claimed that she did not seek legal representation sooner because appellee did not initially tell her he wanted a divorce. Appellant acknowledged that she contacted appellee's attorney, who told her that appellee wanted a divorce; however, she explained to appellee's attorney that she did not know the case was being filed. Appellant did not indicate when this conversation with appellee's attorney occurred. The trial court then stated, "I can't make him stay married to you." *Id.* at 20. Appellant replied, "That's not it. * * * I want the opportunity to at least have a continuance to come back so I can have an answer filed." *Id.* The court responded, "If you file an answer, it's to get a divorce." *Id.* Appellee's counsel did not object to appellant's request for a continuance.

---

[1] Although appellee did not reside in the marital residence, he was also legally evicted.

{¶ 15} The trial court's examination of appellant then shifted to a discussion of the parties' assets and liabilities. During this discussion, appellant reiterated her claims regarding appellee's alleged domestic abuse, drug abuse, and transmission of a sexually transmitted disease. The trial court noted that these allegations only provided further grounds for divorce; they did not establish that the parties "don't need to get a divorce." *Id.* at 25.

{¶ 16} During further discussion of the parties' assets and liabilities, appellant averred that the parties had incurred attorney fees associated with the eviction. When the trial court asked appellant if she had evidence to substantiate that claim, appellant responded, "Not with me, no, ma'am. Like I said, from when I spoke to Ms. Hutchinson, I was - -." *Id.* at 29. Before appellant completed her statement, the trial interjected, "Ma'am, you called my bailiff. My bailiff told you it would not be continued, talk to your attorney, okay?" *Id.* The trial court then completed its inquiry regarding the parties' assets and liabilities, and appellee's counsel cross-examined her about those issues.

{¶ 17} After completing her testimony, appellant cross-examined appellee about the value of his checking, savings, and retirement accounts. During this cross-examination, the trial court questioned both appellant and appellee about the parties' bank accounts. The court also questioned appellant about the furnishings, household items, and jewelry that had been purchased during the marriage and which of those items she had removed from the marital residence following the eviction.

{¶ 18} After redirect and recross-examination of appellee, the trial court determined that it had jurisdiction to grant a divorce on grounds that the parties had lived separate and apart without cohabitation for more than one year. The court ordered that neither party pay spousal support and divided the parties' assets and liabilities in accordance with the evidence.

{¶ 19} After these oral pronouncements, the trial court asked appellant if she believed the marriage could be salvaged. Appellant replied that she had been under that impression because she and appellee began going to counseling in early 2020. Noting that appellee filed for divorce in October 2020, asked for appellant's address, and provided her the name of his attorney, the court stated, "[a]t that point he's telling you that the marriage is over," and that she understood appellee wanted a divorce. *Id.* at 90. Appellant agreed

with the court's assertions, but averred she was shocked about the divorce because appellee led her to believe that his moving out and residing elsewhere was only temporary. The court noted that appellant's testimony about domestic violence constituted grounds for divorce, as did her admission that she and appellee had lived separate and apart without cohabitation for over one year. Accordingly, the court stated that it was going to "terminate your marriage today." *Id.* at 91.

{¶ 20} At the close of the hearing, the parties, appellee's counsel, and the trial court signed a document entitled "Settlement Memo of Divorce," which was entered into the record on May 19, 2021. Although the record is not entirely clear on this point, it appears that this document is a revised version of appellee's proposed judgment entry/decree of divorce with the trial court's handwritten additions based upon the testimony provided by the parties at the hearing. Those handwritten additions include the statement that appellant "appeared and gave testimony that she knew about the divorce and spoke to [appellee's] attorney. " (May 19, 2021 Settlement Memo of Divorce at 1.) The handwritten additions also include a detailed recitation of the property division. On May 20, 2021, the trial court issued its "Judgment Entry/Decree of Divorce," which essentially codified the revised "Settlement Memo of Divorce." Citing appellant's testimony that the parties had lived separate and apart without cohabitation for more than one year, the trial court granted the divorce on that basis. The court divided the parties' assets and liabilities and made no award of spousal support.

{¶ 21} In a timely appeal, appellant assigns three errors for our review:

> [I]. The trial court abused its discretion by refusing to [c]ontinue the [u]ncontested [t]rial date requested by Defendant-Appellant.
>
> [II]. The trial court [abused] its discretion and [erred] as a matter of law in failing to compel the Plaintiff-Appellee to prove that he had made diligent and reasonable attempts to serve the Defendant-Appellant.
>
> [III]. The trial court erred as a matter of law in conducting a divorce trial in which it determined issues of [s]pousal [s]upport and [d]ivision of [p]roperty when it only possessed in rem jurisdiction.

{¶ 22} In her first assignment of error, appellant contends that the trial court abused its discretion by denying her request for a continuance. Appellee claims that appellant did not specifically request a continuance on the record and, as such, has waived her right to appeal the issue.

{¶ 23} In her briefing on the continuance issue, appellant refers to a series of emails involving herself, Ms. Hutchinson, appellee's counsel,[2] and the trial court's bailiff. The emails, outlined below, are set forth in the appendix to appellant's amended brief.

{¶ 24} On May 18, 2021, the day before the hearing, Ms. Hutchinson emailed the trial court's bailiff (and cc'd appellee's counsel and appellant), stating: "[Appellant] was served in case no[.] 20DR003727 by publication. This case is set for uncontested hearing tomorrow. [Appellant] is retaining me and therefore, I am asking for a continuance. I have contacted [appellee's counsel] and he does not have an objection. I will be in court tomorrow for a PCC with Judge Lias, so I will swing in ahead of time to process the continuance. I just wanted to give you a heads up." (Appellant's Am. brief at 34.) The trial court's bailiff responded to Ms. Hutchinson (and cc'd appellee's counsel): "Judge has advised everyone needs to appear tomorrow." *Id.* at 33. Ms. Hutchinson then emailed appellant, directing her to appear at the hearing. Appellant wrote Ms. Hutchinson: "[i]s it possible that it will be continued?" Ms. Hutchinson responded, "Yes, I am almost certain they will continue it." *Id.* at 32.

{¶ 25} On the morning of May 19, 2021 (the day of the hearing), appellant emailed Ms. Hutchinson, "I am here in court." Ms. Hutchinson responded, "I'm trying to get there. I'm in another court." * * * "Will they not allow the continuance until I get there"? After the hearing, appellant emailed Ms. Hutchinson, "What I went through was horrible. Who do I file a complaint with?" That evening, appellant sent another email to Ms. Hutchinson, writing, "Can you please call me[?] I want to appeal what happened today." *Id.* at 30, 31, respectively.

{¶ 26} On May 20, 2021, the day after the hearing, Ms. Hutchinson informed appellant that due to time constraints, she could not represent her; however, she had referred the case to a colleague and urged appellant to contact that colleague.

---

[2] The same counsel represented appellee in the trial court proceedings and on appeal.

**{¶ 27}** At oral argument, counsel for appellant (who did not represent her in the trial court proceedings) acknowledged that neither party testified about the emails nor were they admitted into evidence. " 'Appellate review is limited to the record as it existed at the time the trial court rendered its judgment.' * * * 'A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.' " *Moore v. Moore*, 10th Dist. No. 21AP-276, 2022-Ohio-1862, ¶ 64, quoting *Blevins v. Blevins*, 10th Dist. No. 14AP-175, 2014-Ohio-3933, ¶ 14. Because the emails were not expressly made part of the trial court record, this court may not consider them. However, during the hearing, appellant indicated (in response to a question by the trial court) that she did not have evidence "with her" to support her claim about attorney fees incurred during the eviction proceeding, and then attempted to recount a conversation she had with Ms. Hutchinson. (Nov. 19, 2021 Tr. at 29.) Without permitting appellant to complete her statement, the trial court averred, "Ma'am, you called my bailiff. My bailiff told you it would not be continued, talk to your attorney." (May 19, 2021 Tr. at 29.) Thus, vis-à-vis the trial court's own statements, it is clear that appellant requested a continuance prior to commencement of the hearing.

**{¶ 28}** Moreover, appellant specifically requested a continuance on the record at the hearing. As noted above, in response to the trial court's averment that it could not force appellee to remain married to her, appellant replied, "That's not it. * * * *I want the opportunity to at least have a continuance to come back so I can have an answer filed*." (Emphasis added.) *Id.* at 20.

**{¶ 29}** Accordingly, the record having established that appellant requested a continuance both prior to and on the record at the hearing, we may consider appellant's assignment of error.

**{¶ 30}** "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *Id.*, citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly

in the reasons presented to the trial judge at the time the request is denied.' " *Id.*, quoting *Sarafite.*

{¶ 31} In reviewing whether a trial court abused its discretion in denying a request for a continuance, "an appellate court weighs any potential prejudice to the movant against the court's right to control its docket and the public's interest in the efficient dispatch of justice." *In re K.J.*, 10th Dist. No. 17AP-457, 2018-Ohio-471, ¶ 17, citing *State v. Woods*, 10th Dist. No. 09AP-667, 2010-Ohio-1586, ¶ 24. In evaluating a request for a continuance, we consider "the length of the delay requested; whether other continuances have been requested and received; the inconveniences to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Unger* at 67-68.

{¶ 32} As to the first *Unger* factor, the record does not reflect the exact "length of the delay requested." Appellant testified that she was in the process of retaining Ms. Hutchinson as counsel. At oral argument, appellee's counsel acknowledged that Ms. Hutchinson, acting as counsel for appellant, requested a continuance on her behalf prior to the hearing and that he did not object to that request. Although the length of the delay was essentially indefinite, we find, under the circumstances of this case, that this factor arguably weighs in favor of granting a continuance. It is doubtful that appellee's counsel would have agreed to an unreasonably lengthy delay in the proceedings. Furthermore, given the modest size of the marital estate and the relative simplicity of the issues involved (since the parties owned no real estate and had no children), it is unlikely that a protracted delay in the proceedings would have been necessary.

{¶ 33} The second *Unger* factor, "whether other continuances have been requested and received," also weighs in favor of granting a continuance. The record establishes that no prior continuances had been requested by either party.

{¶ 34} Third, we consider "the inconveniences to litigants, witnesses, opposing counsel and the court." This factor also weighs in favor of granting a continuance. Appellee does not suggest in his briefing that he or any potential witnesses he may wish to present would be inconvenienced by a continuance; indeed, at the hearing, appellee provided only

his own testimony in support of his case; he presented no witnesses. Moreover, appellee's counsel did not object to a continuance either when it was proposed by Ms. Hutchinson the day before the hearing or when appellant specifically requested a continuance on the record during the hearing.

{¶ 35} On the subjects of "whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful or contrived" and "whether the defendant contributed to the circumstance which gives rise to the request for a continuance," we glean from the trial court's pointed questioning of appellant as to appellee's efforts to serve her and her response to those efforts, and its admonishment of appellant for failing to seek legal representation until just prior to the hearing, that the court believed that appellant was dilatory and contributed to the circumstances giving rise to the request for a continuance. However, we also note appellant's testimony that she provided her address to appellee and attributed her delay in seeking legal representation both to her surprise that appellee had filed for divorce and her year-long legal wrangling with appellee's mother regarding the eviction. On balance, these factors arguably weigh in favor of denying a continuance.

{¶ 36} Finally, the catch-all considerations of *Unger* militate in favor of granting a continuance. We reiterate that appellee's counsel did not oppose the request for continuance either when it was proposed prior to the hearing or when appellant requested it on the record at the hearing. When the pre-hearing request for continuance was denied, and Ms. Hutchinson was unable to attend the hearing, appellant was constrained to appear pro se. Review of the transcript reveals that appellant was wholly unprepared to represent herself. Indeed, appellant testified that she did not answer appellee's complaint because she did not know how to do so. Further, appellant's testimony was often disjointed, confusing, and difficult to follow. So, too, was appellant's attempted cross-examination of appellee. In addition, appellant presented no documentary evidence regarding the parties' assets and liabilities. For example, when the trial court asked her if she had evidence to support her claim about attorney fees incurred during the eviction, appellant responded, "Not with me, no ma'am." (May 19, 2021 Tr. at 29.) However, in so answering, appellant invoked Ms. Hutchinson's name. Had the trial court permitted appellant to complete her statement about Ms. Hutchinson, appellant may have provided some insight into their discussions, including what strategy Ms. Hutchinson planned to employ and what, if any,

evidence she planned to introduce. We again note the modest size of the marital estate and the relative simplicity of the issues involved in the divorce proceeding.

{¶ 37} Although there is no mechanical test for deciding when a trial court abuses its discretion in denying a requested continuance, we conclude, after weighing the factors set forth in *Unger,* that the danger of potential prejudice to the movant, here appellant, was greater than the trial court's need to control its own docket and the public's interest in the efficient dispatch of justice.  *K.J.,* 10th Dist. No. 17AP-457, 2018-Ohio-471, at ¶ 17. Therefore, under the facts of this case, we conclude that the trial court's denial of appellant's request for a continuance was an abuse of discretion.  We therefore sustain appellant's first assignment of error.

{¶ 38} In light of the disposition of appellant's first assignment of error, appellant's second and third assignments of error are moot and we decline to address them.[3]

{¶ 39} Having sustained appellant's first assignment of error, and having found appellant's second and third assignments of error moot, we hereby reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch and remand the case to that court for further proceedings.

*Judgment reversed; cause remanded.*

DORRIAN and MENTEL, JJ., concur.

———————————

[3] At oral argument, counsel for appellee agreed that a finding by this court that the trial court abused its discretion in denying appellant's requested continuance would render moot appellant's second and third assignments of error.