[Cite as *State v. Lee*, 2025-Ohio-5761.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 115047 |
| JAMES LEE, SR., | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 24, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-691699-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Karen Greene, Assistant Prosecuting Attorney, *for appellee.*

Edward M. Heindel, *for appellant.*


MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant James Lee, Sr. ("Lee"), appeals from his judgment of conviction, which was entered after his guilty plea to several sexually oriented offenses; Lee represented himself at the time he entered his guilty plea. After a thorough review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

{¶ 2} Charges were initially filed against Lee in March 2024, in Case No. CR-24-690083-A. The case was dismissed in June 2024, because Lee had been reindicted in the within case in May 2024. The indictment in this case consisted of 27 counts relative to two victims. It was alleged that victim No. 2 was under the age of 13 when some of the crimes were committed. The indictment further alleged that crimes began in 2011 and continued through 2023.

{¶ 3} Lee was declared indigent, and two attorneys from the county public defender's office were assigned to represent him. The defense and the State engaged in discovery, and the trial court set trial for July 23, 2024. The case did not proceed to trial on July 23, 2024, however, because the trial court was engaged in another trial. The trial court reset the trial date for September 3, 2024.

{¶ 4} A pretrial hearing was held on August 28, 2024, at which Lee sought a continuance of the September 3, 2024 trial on the ground that the defense and the State were engaged in ongoing negotiations. The trial court granted the request and reset trial for September 9, 2024.

{¶ 5} On September 9, 2024, Lee informed the trial court that he wished to proceed pro se. The trial did not go forward on that day, and the trial court referred Lee to the psychiatric clinic for a competency evaluation. The evaluation was scheduled to take place on October 8, 2024. The trial court held a hearing on October 9, 2024, and noted that Lee failed to appear for his competency evaluation. Lee's attorneys made an oral motion to withdraw from the case on the ground that

the attorney-client relationship had deteriorated beyond repair. The trial court granted the request and appointed replacement counsel that same day.

{¶ 6} Lee's new attorney and the State engaged in discovery, and a new trial date was set for February 3, 2025. Lee submitted to a competency evaluation, and on December 10, 2024, the defense and the State stipulated to the results of the evaluation report, which found Lee competent to stand trial. A final pretrial hearing was set for January 29, 2025.

{¶ 7} At the January 29, 2025 pretrial, the court stated that it would not be available for trial on February 3, 2025, but would be available the following day, February 4, 2025, and that would be the new trial date. Lee again indicated that he wished to proceed pro se and asked to continue the February 4, 2025 trial date until the end of February 2025, to give him to prepare. The trial court questioned Lee about his desire to represent himself and stated that it was going to go over the waiver-of-counsel form "line-by-line . . . [t]o make sure that [Lee was] fully aware of what [self-representation] actually entails." Tr., Vol. I, 15. The trial court did just that, informing Lee of his constitutional right to counsel, the charges against him, and the possible penalties he faced, including sex offender registration requirements and the application of the Reagan Tokes Law. *Id.* at 16-45. After setting forth the charges and possible penalties separately for each of the 27 counts, the trial court asked Lee if he had any questions. With the exception of a question Lee posed after the trial court informed him about Count 22, Lee told the court that he did not have any questions.

{¶ 8} Lee's question after the trial court's advisement as to Count 22 related to postrelease control. Lee questioned the trial court as to why the waiver-of-counsel form read "postrelease control after prison," but the trial court was advising him that he would be subject to postrelease control "after *my* release from prison." (Emphasis added.) *Id.* at 38. The court answered, "I'm just trying to make it clear this is all in reference to you, Mr. Lee." *Id.* at 39. Lee indicated that he understood and did not have any further questions. Further, at the conclusion of the trial court's explanation for all the counts, the trial asked, "Any questions as to any of the counts in the indictment, Counts One through Twenty-Seven, Mr. Lee?" *Id.* at 45. Lee responded, "No questions." *Id.*

{¶ 9} The trial court then explained to Lee the prohibition against hybrid representation; Lee indicated that he understood. The trial court proceeded to explain the State's burden of proof and the parties' responsibilities regarding discovery. Lee responded that he had not received discovery. The State told the court that if it granted Lee's request to represent himself it had all the paper discovery printed out and would provide it to Lee. The State further referenced three other discovery items — a body-camera recording and two confidential documents (then forensic interviews of the victims) from the Cuyahoga County Division of Children and Family Services ("CCDCFS").

{¶ 10} Regarding the body-camera recording, the State said it would have the recording copied to a compact disc and provide it to Lee. Regarding the confidential CCDCFS documents, the State told the court that it believed the same copy that the

court released to the State could be released to Lee. The trial court indicated that it would perform an in camera inspection of the documents.

{¶ 11} The trial court continued its colloquy with Lee, explaining the possible legal defenses he may have, the perils of proceeding pro se, and the requirement that he comply with all applicable legal requirements, including adhering to the rules of evidence and criminal procedure. The final advisement the trial court gave Lee regarding self-representation was relative to his waiver of an ineffective-assistance-of-counsel claim on appeal. Specifically, the trial court advised Lee, "You are the lawyer in this situation . . . [s]o you can't claim that since you're acting as your own representation that you lost because you did a bad job." *Id.* at 61. Lee indicated that he understood and had "no intention" of raising an ineffective-assistance-of-counsel claim on appeal should he not be successful at trial. *Id.* at 62.

{¶ 12} Lee stated that he understood all that the trial court reviewed with him and it was still his desire to represent himself. The trial court granted Lee's request to proceed pro se, and Lee signed a waiver-of-counsel form. After his signature, Lee wrote "all rights reserved under duress." The trial court questioned him about that and Lee said, "That's how I sign any document that I don't prepare, Your Honor." *Id.* at 74. The trial court explained to Lee that it had to know if he was voluntarily relinquishing his right to counsel or if someone was forcing him. Lee explained, "No, no. I'm not saying that someone's forcing me," but the "stress" of "malicious jail time" made him be "under duress in this situation." *Id.* at 75. The trial court asked Lee, "But at the end of the day, you want to represent yourself, correct?" *Id.* at 76.

Lee responded, "Yes, Your Honor . . . . A hundred percent." *Id.* Lee's newly appointed attorney was named as standby counsel.

{¶ 13} The State provided Lee with discovery, with the exception of the three items previously mentioned, which it represented would be ready for Lee to retrieve later that day. The trial court also asked Lee if he would be able to view the discovery the State had on a disk, and Lee indicated that he would. The trial court provided Lee with the rules of evidence and a criminal statute book to aid in his preparation for trial.

{¶ 14} The trial court asked Lee if a two-week continuance would be sufficient for him to prepare; Lee answered in the affirmative. At the end of the January 29, 2025 hearing, the trial court informed Lee that they would reconvene on February 4, 2025, to make sure he had all discovery from the State. The trial date was set for March 10, 2025. Near the conclusion of the hearing, Lee stated that he did not "know how prepared I'll be in a month to proceed as an attorney, even though I'm not one." *Id.* at 77.

{¶ 15} At the February 4, 2025 hearing, the State informed the trial court that the discovery on CDs was left for Lee to receive from the prosecutor's office. Lee told the trial court that he did not make it to the prosecutor's office to get the discovery and he planned to get it that day. Lee told the court that he needed to get a laptop on which he would be able to view the CDs. Lee also told the court that he had started to review the other discovery the State previously provided to him. Regarding the records from CCDCFS, the State noted that they had previously been

marked as "counsel only." The trial court ordered Lee and the State to schedule a time when Lee could review the discovery. Another pretrial was set for February 11, 2025.

{¶ 16} The parties were present for the February 11, 2025 hearing, and Lee represented that he obtained the CDs from the prosecutor's office and was able to view them. The State indicated that it was meeting with Lee on February 25, 2025, so that Lee could review the CCDCFS records. The trial court set another pretrial hearing for that same date — February 25, 2025.

{¶ 17} On February 25, 2025, the parties convened for the pretrial hearing. Lee acknowledged that he was able to review the remaining discovery. The trial court ordered the State to provide copies of the most recent discovery to Lee to assist him with preparation for trial, which remained set for March 10, 2025. Lee told the court that he would not be ready for trial on March 10, 2025, and he was planning on filing a motion to continue. The trial court responded as follows:

> Mr. Lee, this case has been pending. You were first arraigned on the earlier case number that has now been dismissed on April 4th of 2024.[1] This case has been almost pending for a year. It is still pending much because of the requests you made to this Court. You have not gotten along with initial trial counsel, and new trial counsel has been appointed. You sought to represent yourself.
>
> So I'll tell you this. The likelihood of me granting the continuance motion is very low. This case has been pending for almost a year. So I don't know what you put in that motion, but there has to be some pretty good reason for me to continue this case.

---

[1] For clarification, Lee was arraigned on April 4, 2024, and the case was dismissed was June 5, 2024. *See* docket, Case No. CR-24-690083-A.

Tr. Vol. I, at 93.

{¶ 18} Lee responded that the State was given time to prepare its case and he needed time too so that he could have a "fair trial." *Id.* at 94. The trial court assured Lee that "[n]o matter what, you will have a fair trial whether it's tried tomorrow, two weeks from now, three weeks from now, a month from now. You are going to have a fair trial." *Id.* at 95. Lee expressed his displeasure with his original counsel and his feeling that he was being "railroaded." *Id.* The trial court reminded Lee of the perils of representing himself, as had been discussed in the court's colloquy with him prior to accepting his waiver of counsel, and told him to be ready to proceed to trial on March 10, 2025.

{¶ 19} A jury trial commenced on March 10, 2025, with Lee representing himself and counsel on standby; voir dire was started. At the start of trial the following day, the trial court indicated that it was its intention to finish voir dire and begin the State's case in chief. The court asked the parties about their witnesses and how much time they anticipated needing for the presentation of their evidence; Lee told the court that he did not have his witness list.

{¶ 20} The trial court indicated that it was its usual practice to inquire about plea negotiations prior to swearing in a jury. Lee indicated that he was open to a plea agreement. The State proposed the original plea it had offered Lee: Count 2, rape, as indicted but with deletion of the sexually violent predator specification; Count 6, gross sexual imposition, as indicted; Count 10, amended from rape to sexual battery; Count 15, gross sexual imposition as indicted, but with deletion of

the sexually violent predator specification; Count 18, gross sexual imposition, as indicted but with deletion of the sexually violent predator specification; and Count 24, gross sexual imposition, as indicted but with deletion of the sexually violent predator specification. Lee indicated that he did not wish to accept that plea offer and asked for time to talk to his standby counsel, which the trial court permitted.

{¶ 21} When the court reconvened, the parties indicated that they had negotiated a new plea agreement. Under the agreement, Lee pleaded guilty to Count 2, amended from rape to sexual battery; Count 10, amended from rape to sexual battery; Count 15, gross sexual imposition as indicted; and Count 18, gross sexual imposition as indicted.[2] The four counts contained sexually violent predator specifications, which were dismissed. The remaining counts of the indictment were also dismissed.

{¶ 22} The record demonstrates that, prior to accepting Lee's guilty plea, the trial court informed him of all the possible penalties, including that a plea to Counts 2 and 10, as amended to felonies of the second degree, was punishable in yearly increments from two to eight years, and that both counts were subject to mandatory prison time. The trial court further advised Lee that Count 2 would be subject to the Reagan Tokes Law. The trial court also advised Lee that his guilty plea would designate him as a sexual offender and he would be required to register as such. Lee

---

[2] Count 2 was relative to victim No. 1, and Counts 10, 15, and 18 were relative to victim No. 2. The dates of the crimes were May 2021 (Count 2); December 2011 through December 2012 (Count 10); December 2012 through December 2013 (Count 15); and December 2013 through December 2014 (Count 18).

did not have any questions about his understanding of the plea agreement, and the record demonstrates that the trial court engaged in a thorough and complete Crim.R. 11 colloquy with Lee prior to accepting his plea as being knowing, intelligent, and voluntary. Sentencing was scheduled for March 19, 2025.

{¶ 23} On March 14, 2025, Lee filed several filings and motions, including a motion to rescind the plea deal, which the trial court deemed as a motion to withdraw his plea. In his motion, Lee contended that his guilty plea was not knowingly, intelligently, and voluntarily entered into because he was not fully informed of the consequences. Lee also claimed that he entered the guilty plea under duress and coercion.

{¶ 24} On March 19, 2025, the date set for sentencing, the trial court entertained Lee's motions. Regarding the motion to withdraw his plea, Lee explained that

> nothing was promised to me, but it was my understanding that the sentence that I would be accepting was for two years. And after hearing after everything was amended, along with the Reagan Tokes [Law] . . . that there would be mandatory time added onto that, so what I was originally under the impression of two years had increased to upwardly eight plus years. So at that point in time, I no longer wanted to accept the plea deal, but I did. Under my own volition, I accepted the charges, pled guilty to the amended charges.

Tr. Vol. II, 251.

{¶ 25} The trial court stated that it had reviewed the transcript from the change-of-plea hearing and after giving Lee's "arguments fair and considerate consideration," "would not characterize [them] as any more than a change of heart."

*Id.* at 253. The trial court denied Lee's motion to withdraw his plea and proceeded to sentencing.

{¶ 26} Count 2 was subject to the Reagan Tokes Law, and the trial court sentenced Lee to eight years up to a maximum indefinite sentence of 12 years on that count. The court imposed a sentence of eight years on Count 10, 60 months on Count 15, and 60 months on Count 18. The trial court ordered that the sentences on Counts 2 and 10 be served consecutively to each other and concurrently to the sentences on Counts 15 and 18, for a total 16- to 20-year sentence. Lee appeals and assigns the following two assignments of error for our review:

I.      The trial court abused its discretion and violated Lee's right to due process by denying his request for a continuance, despite the fact that he had only 39 days to review discovery materials. Under these circumstances, the denial deprived him of a meaningful opportunity to prepare his defense and undermined the fundamental fairness of the proceeding.

II.     The trial court abused its discretion by denying Lee's presentence motion to withdraw his guilty plea, in contravention of Crim.R. 32.1 and established Ohio precedent.

**Law and Analysis**

{¶ 27} In his first assignment of error, Lee contends that the trial court abused its discretion by denying his motion for a continuance of the trial, leaving him only 39 days to review discovery and prepare for trial. According to Lee, the denial of his motion to continue violated his due-process rights and directly influenced his decision to plead guilty.

{¶ 28} A trial court has broad discretion in ruling on a motion to continue a trial date. *Lee v. Jackson*, 2017-Ohio-8296, ¶ 7 (10th Dist.), citing *Morgan v. Ohio State Univ. College of Dentistry*, 2014-Ohio-1846, ¶ 53 (10th Dist.); *State v. Unger*, 67 Ohio St.2d 65, 67 (1981) ("The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge."). Thus, we review a trial court's determination of a motion to continue a trial date for an abuse of discretion. *Lee* at *id.* "A court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority" constitutes an abuse of discretion. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

> "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."

*State v. Unger*, 67 Ohio St.2d 65, 67 (1981), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589-590 (1964).

{¶ 29} Our review weighs "'potential prejudice to the movant against the court's right to control its docket and the public's interest in the efficient dispatch of justice.'" *Brim v. Brim*, 2022-Ohio-2596, ¶ 31 (10th Dist.), quoting *In re K.J.*, 2018-Ohio-471, ¶ 17 (10th Dist.). Courts deciding a motion to continue a trial date consider the following factors: (1) the length of the delay requested; (2) whether there were other continuances or requests; (3) inconvenience to litigants, witnesses, opposing counsel, and the court; (4) whether the requested continuance is legitimate or rather dilatory or contrived; (5) whether the movant contributed to the

need for a continuance; and (6) other factors unique to the facts of each case. *Id.*, citing *Unger* at 67-68.

{¶ 30} Here, Lee did not specify how much more time he needed to prepare for trial; he merely stated that he did not feel prepared. The trial date had already been continued five times, which included a continuance after Lee's decision to represent himself. After Lee proceeded pro se, the trial court held several pretrial hearings to ensure that Lee had all discovery from the State.

{¶ 31} Further, the record demonstrates that the State was prepared for trial on March 10, 2025 — and the trial commenced on that date. Thus, the trial court and the State were prepared for trial and the State had its witnesses — including the two victims — prepared to testify. A continuance of the trial would have been inconvenient to the witnesses, the State, and the trial court.

{¶ 32} At the February 25, 2025 hearing, Lee offered two reasons for his request for a continuance: he needed more time to prepare and he had issues with his former counsel. Issues regarding his former counsel were moot. After the trial court granted Lee's former counsel leave to withdraw, new counsel was appointed for him. However, Lee opted to proceed pro se. The record shows that the trial court went to great lengths to ensure that Lee understood the perils of self-representation.

{¶ 33} Further, we are not persuaded by Lee's claim he did not have sufficient time to prepare the trial. The trial court set numerous pretrial hearings to make sure that Lee had all of the discovery and was able to view the CDs. In one instance, Lee

did not retrieve discovery from the prosecutor's office when it was initially made available to him. Although Lee claims that he only had 39 days to review the discovery and prepare for trial after the trial court granted his request to proceed pro se, the majority of discovery had already been provided to his former counsel and, because Lee has not claimed otherwise, we presume that counsel had discussed it with him. The record does not demonstrate that Lee was ambushed with new material at the last minute. Rather, it appeared that Lee's request for a continuance was merely a delay tactic.

{¶ 34} On this record, the trial court did not abuse its discretion by denying Lee's request for a continuance of the trial. The first assignment of error is therefore overruled.

{¶ 35} In his second assignment of error, Lee challenges the trial court's decision to deny his motion to withdraw his plea.

{¶ 36} A presentence motion to withdraw a guilty plea should be freely and liberally granted, and there is a presumption in favor of permitting a presentence plea withdrawal. *State v. Barnes*, 2022-Ohio-4486, ¶ 21, citing *State v. Xie*, 62 Ohio St.3d 521 (1992). "This is the presumption from which all other considerations must start." *Id.* However, "a defendant does not have an absolute right to withdraw guilty plea," and "denying a defendant's motion to do so has been upheld in various circumstances[.]" (Citations omitted.) *Id.* at ¶ 22. A trial court must conduct a hearing to determine whether there is "a reasonable and legitimate basis" for withdrawing the plea, and the decision to grant or deny the motion "is within the

sound discretion of the trial court." *Xie* at paragraphs one and two of the syllabus. Absent an abuse of discretion, the trial court's decision must be affirmed. *Id.* at 527. As mentioned, "[a] court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority" constitutes an abuse of discretion. *Abdullah*, 2021-Ohio-3304, at ¶ 35.

{¶ 37} Courts have identified nine nonexhaustive factors for evaluating a presentence motion to withdraw a guilty plea. *State v. Wilder*, 2025-Ohio-3075, ¶ 20 (8th Dist.). Those factors include whether (1) the defendant was represented by competent counsel, (2) the defendant was given a full Crim.R. 11 hearing before he entered his or her plea, (3) the defendant is given a complete hearing on the motion to withdraw, (4) the record reveals that the court gave full and fair consideration to the plea-withdrawal request, (5) the motion was made in a reasonable time, (6) the motion stated specific reasons for withdrawal, (7) the record shows that the defendant understood the nature of the charges and the possible penalties, (8) the defendant had evidence of a plausible defense, and (9) the State would be prejudiced by permitting the defendant to withdraw his or her guilty plea. *Wilder* at ¶ 20-21, citing *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist. 1980), paragraph three of the syllabus; *State v. Fish*, 104 Ohio App.3d 236 (1st Dist. 1995); *Barnes* at ¶ 32 (Brunner, J., concurring).

{¶ 38} Lee contends that because he, a nonlawyer, represented himself, the factor considering whether the defendant was represented by highly competent counsel should inure to his benefit. This court has previously addressed such a claim

finding that "[h]aving waived his [or her] constitutional right to counsel, [a defendant] cannot now contend that the trial court abused its discretion by denying his [or her] motion to withdraw on the basis that he [or she] represented himself [or herself] during the plea hearing." *State v. McKissick*, 2018-Ohio-282, ¶ 21 (8th Dist.).

{¶ 39} Lee concedes, and we agree, that he was afforded a Crim.R. 11 hearing prior to entering his plea. Further, the record demonstrates that the trial court went to great lengths to ensure that Lee understood the nature of the charges and the possible penalties he faced.

{¶ 40} Regarding the hearing on his motion to withdraw his plea, Lee contends that it "offered little in the way of substantive inquiry into his claims." Appellant's brief, p. 22. Specifically, Lee contends that the trial court never inquired into whether he was claiming innocence. Our response to Lee's argument dovetails into our response regarding the first factor: Lee opted to represent himself and the failure to raise the issue of innocence was his. Further, there is no indication in the record that Lee was innocent or had a complete defense to the charges.

{¶ 41} Similarly, the trial court gave fair and full consideration to Lee's motion to withdraw his plea. The trial court allowed Lee to present his ground for his request to withdraw his plea. Lee admitted that no promises were made to him to induce his plea, but despite no longer wanting to accept the plea deal, he did "Under my own volition . . . ." Tr. Vol. II, 251. The trial court found, and we agree, that Lee's reason amounted to nothing more than a change of heart. It is well-

established that "[a] mere change of heart regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a guilty plea." *McKissick*, 2018-Ohio-282, at ¶ 22 (8th Dist.), citing *Ohio v. Westley*, 2012-Ohio-3571 (8th Dist.), citing *State v. Drake*, 73 Ohio App.3d 640 (8th Dist. 1991)

{¶ 42} Lee entered his guilty plea on March 11, 2025, and filed his motion to withdraw the plea on March 14, 2025. His motion to withdraw was timely made. And although Lee provided specific reasons for his request to withdraw his plea, the reasons, as discussed, were not valid.

{¶ 43} Regarding prejudice to the State, the State filed a written brief in opposition to Lee's motion to withdraw his plea, wherein it stated that the two victims had prepared numerous times for trial in this case and were "on the cusp of obtaining closure." State's March 18, 2025 brief in opposition, p. 3. Not only were the victims prepared — which included having to prepare to be cross-examined by their abuser — other State witnesses would be inconvenienced by having to appear again.

{¶ 44} On this record, Lee has failed to demonstrate that the trial court abused its discretion by denying his motion to withdraw his plea. The second assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., and
MARY J. BOYLE, J., CONCUR