[Cite as *State v. Wilder*, 2025-Ohio-3075.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                :

    Plaintiff-Appellee,            :

    v.                                        :

JASON WILDER,                          :

    Defendant-Appellant.        :

No. 114716

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 28, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-683353-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brad S. Meyer, Assistant Prosecuting Attorney, *for appellee*.

Robert A. Dixon, *for appellant*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant Jason Wilder appeals from the trial court's judgment denying his presentence motion to withdraw his guilty plea. Finding no merit to the appeal, this court affirms.

## I. Procedural History

{¶ 2} In August 2023, the State named Wilder and his younger brother and codefendant, Jaden Hughey, in a 13-Count indictment charging them both with aggravated murder in violation of R.C. 2903.01(A), an unclassified felony (Count 1); two counts of murder in violation of R.C. 2903.02(A) and (B), unclassified felonies (Counts 2 and 3, respectively); two counts of felonious assault, in violation of R.C. 2903.11(A)(1), second-degree felonies (Counts 4 and 7); four counts of felonious assault, in violation of R.C. 2903.11(A)(2), second-degree felonies (Counts 5, 8, 10, and 13); two counts of attempted murder, in violation of R.C. 2923.02/2903.02(A), first-degree felonies (Counts 6 and 9); and two counts of discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3), first-degree felonies (Counts 11 and 12). Each count contained one-, three-, and six-year firearm specifications, and sought forfeiture of the weapons involved. The charges arose from a shooting where a teenager died and two other teenagers suffered serious physical harm. Wilder pleaded not guilty, and the trial court assigned two attorneys to represent him.

{¶ 3} In March 2024, after approximately a year of pretrials, the trial court granted Wilder's request for new counsel and assigned him two new attorneys. The court set a trial date for July 10, 2024, but subsequently continued the trial until September 30, 2024, because of ongoing discovery and plea negotiations.

{¶ 4} On the day of trial, the State offered both Wilder and Hughey a packaged plea agreement, contingent upon both defendants accepting the plea offer.

During discussions about the agreement, it was clear that the parties were confused about the State's sentencing parameters. The court adjourned for lunch, permitting the parties to continue their plea negotiations, but the court advised that following lunch, the matter would proceed with either a plea or a trial.

{¶ 5} Following the lunchbreak, the State advised that no further plea negotiations occurred because the parties were at an impasse concerning the definite sentencing range between 25 and 32 years. After the trial court provided an example of how it could potentially reach the 25-year mark, the court granted a joint motion to continue trial until the following morning. Wilder executed a written jury waiver, which the court accepted following the requisite colloquy. The record further reflects that the trial court permitted Wilder to visit with his father in the courtroom. The court adjourned for the evening.

{¶ 6} When the court reconvened the following day, counsel advised:

> [Wilder] has indicated that there is an interest in working out the case as offered by the State of Ohio yesterday. As the Court knows, this is a package deal. I don't know if the Court knew that or not. This is a package deal, Your Honor. It does appear that the co-defendant, Mr. Hughey, wants to go to trial in this case. I did reach out to the State of Ohio and asked, you know, under these circumstances, with so much at stake, a possible life without parole sentence versus 25 to 32 range, would the State of Ohio consider unpackaging the cases so that Mr. Wilder could plead guilty, take responsibility if that's what he wants to do, and try to receive a 25-year sentence from this Honorable Court.
>
> The State of Ohio at this time, it's my understanding, is not willing to unpackage the cases. So therefore, my client is being forced pretty much to go to trial with a case that he is likely or has indicated a willingness to enter into some type of plea agreement. So it's my understanding the State will not unpackage it, so we are here for trial, Judge.

(Oct. 1, 2024 hearing, tr. 1-2.) Thereafter, Hughey's counsel noted that his client had changed his mind and wished to accept the State's offer.

{¶ 7} The State placed the plea agreement on the record that it would (1) amend the aggravated murder offense in Count 1 to involuntary manslaughter and delete both the one- and six-year firearm specifications, leaving the three-year firearm and forfeiture specifications intact; (2) amend the felonious assault offense in Count 7 by deleting the one- and six-year firearm specifications, leaving the three-year firearm and forfeiture specifications intact; and (3) amend the felonious assault offense in Count 10 by deleting the one- and six-year firearm specifications, leaving the three-year firearm and forfeiture specifications intact. The State further advised that by accepting the agreement, (1) the State would dismiss all other charges and specifications, (2) Wilder waives his right to judicial release; and (3) the parties agree to a definite sentencing range of 25 to 32 years, plus the Reagan Tokes indefinite sentence.

{¶ 8} The trial court meticulously followed along with the State's presentation of the plea offer, asked questions, and clarified the terms when necessary, including explaining how the firearm specifications would necessarily run consecutively to the underlying offenses and that it would then "craft the sentences" to "honor the agreement." (Oct. 1, 2024 hearing, tr. 7.)

{¶ 9} The trial court then conducted a thorough and complete change-of-plea hearing and advised Wilder of his Crim.R. 11 rights, verified that he understood that pleading guilty waives those rights, and confirmed that he understood the

nature of the offenses, the effects of his plea, and the maximum penalties involved. Wilder confirmed that no threats or promises (except the agreed-definite-sentencing range) were made to induce him into pleading guilty to the offenses. Additionally, the court stated it would honor the agreed definite sentencing range of 25 to 32 years. Wilder indicated that he had no questions regarding his rights, the charges, or possible sentence and all parties agreed that the trial court complied with Crim.R. 11. Wilder then pleaded guilty to the offenses and specifications in accordance with the plea agreement. The trial court ordered a presentence investigation and report and continued the matter for sentencing.

### A. Wilder Moves to Withdraw His Plea

{¶ 10} On November 12, 2024, Wilder moved to withdraw his guilty plea by generally professing actual innocence and arguing that he did not fully understand the terms of the plea agreement. Hughey filed his own motion to withdraw his plea.

{¶ 11} On December 5, 2024, the trial court conducted a hearing on both motions. Relevant to this appeal, counsel reiterated that Wilder claimed actual innocence and wished to go forward with trial. His protestation of innocence, however, was not based on any specific defense or fact revealing innocence.

{¶ 12} The State opposed Wilder's motion, contending that the plea spanned over two days, with the court allowing Wilder to speak to family, counsel, and "sleep on it," prior to accepting the plea agreement. According to the State, Wilder's motion was merely a change of heart.

{¶ 13} The State then attempted to produce multiple exhibits purportedly refuting Wilder's claim of actual innocence. Wilder objected to the trial court viewing the exhibits because he previously waived his right to a jury, and any subsequent trial could be before the trial judge. The trial court agreed with Wilder, and further agreed that Wilder had yet to offer any evidence of his innocence for the State to rebut. Accordingly, the trial court accepted the exhibits as proffered evidence, preserving them for solely appellate review. The trial court therefore did not review the exhibits in rendering its decision on Wilder's motion.[1]

{¶ 14} The trial court permitted the State to present arguments about the evidence, including video of the shooting, and ballistic and DNA evidence purportedly linking Wilder to the weapons recovered, and a letter written between Wilder and Hughey about accepting a plea deal. Wilder disputed that the exhibits proved his guilt.

{¶ 15} Wilder then addressed the court, stating that even though he had time to go over the agreement, he really did not understand it. He explained that he did not understand how the State could ask for a maximum sentence when the court makes that decision, nor did he understand how he could receive nine years on firearm specifications when it was all "one transaction." He generally asserted that

---

[1] A proffer assists a reviewing court when determining whether the trial court's exclusion of evidence affected a substantial right of the appellant as required by Evid.R. 103. On appeal, Wilder does not raise any argument that the trial court should have reviewed or considered the State's proffered exhibits when rendering its decision.

nothing made sense to him. The trial court explained that it would impose the sentence, not the State.

{¶ 16} After hearing arguments from both parties, including Wilder's statements, and reviewing the transcripts from both days of the plea hearing, the trial court denied Wilder's request to withdraw his plea. The trial court then sentenced Wilder within the agreed and jointly recommend sentence, imposing a definite sentence of 27 years with a maximum of 32 years.

## II. The Appeal

{¶ 17} Wilder now appeals, contending in his sole assignment of error that the trial court abused its discretion when it denied his presentence motion to withdraw his guilty plea.[2]

{¶ 18} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 19} In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). It is well established, however, that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of

---

[2] The trial court also denied Hughey's motion to withdraw his plea. He has filed his own appeal under *State v. Hughey*, 8th Dist. Cuyahoga No. 114712.

the plea." *Id.* at paragraph one of the syllabus. Although a presentence motion to withdraw should be "freely and liberally granted," the decision to grant or deny a presentence motion to withdraw is within the trial court's discretion. *Id.* at paragraph two of the syllabus. An abuse of discretion occurs when "a court exercise[s] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 20} Courts have traditionally considered nine factors when reviewing a trial court's decision denying a defendant's presentence motion to withdraw a guilty plea. Those factors include whether a defendant was (1) represented by competent counsel, (2) given a full Crim.R. 11 hearing before he entered the plea, (3) given a complete hearing on the motion to withdraw, and (4) the record reflects that the court gave full and fair consideration to the plea-withdrawal request. *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist. 1980), paragraph three of the syllabus. *See also State v. Owens*, 2025-Ohio-1908, ¶ 11 (9th Dist.).

{¶ 21} Additionally, courts evaluate whether (5) the motion was made in a reasonable time, (6) the motion stated specific reasons for withdrawal, (7) the defendant understood the nature of the charges and the possible penalties, and (8) the defendant had evidence of a plausible defense. *State v. Fish*, 104 Ohio App.3d 236 (1st Dist. 1995), *see also State v. Heisa*, 2015-Ohio-2269 (8th Dist.); *Owens* at *id.* Finally, courts have considered (9) "whether the state would be prejudiced if the defendant were permitted to withdraw his guilty plea." *State v. Barnes*, 2022-Ohio-4486, ¶ 32 (Brunner, J., concurring), citing *State v. Richter*, 1983 Ohio App. LEXIS

15476, *2 (8th Dist. Sept. 29, 1983).  Consideration of these factors is a balancing test, and no one factor is conclusive.  *Fish* at 240.

{¶ 22} On appeal, Wilder contends that the trial court abused its discretion because it did not consider his defense of actual innocence or confusion about the potential sentence, but focused entirely on the prejudice to the State if the plea would be withdrawn.  We disagree.

{¶ 23} First, prejudice to the State is one factor that the trial court considered — a factor that courts typically consider in reviewing a presentence motion to withdraw a plea.  *See Barnes*, 2022-Ohio-4486, at ¶ 32 (Brunner, J., concurring). The trial court noted that the case had been set for trial three times, with witnesses subpoenaed, and the "State might be prejudiced [if the motion was granted]," but it did not focus entirely on this factor alone.

{¶ 24} Rather, the trial court considered all the relevant factors, including the State's concession that Wilder's motion was timely and that it afforded Wilder a hearing on his motion to withdraw.  The court stated that it had reviewed the transcripts of the plea hearing and considered Wilder's arguments for withdrawing his plea.  The court then addressed that it granted Wilder's request for new counsel when he expressed dissatisfaction with his originally assigned counsel, afforded Wilder multiple continuances of trial for ongoing discovery, and provided him opportunities to meet with counsel and family members in the courtroom, including when negotiating and contemplating whether to accept the State's plea offer.  The court further noted that the plea occurred on the day of trial and after it confirmed

with Wilder that he wished to take the plea.  The court stated it reviewed the Crim.R. 11 plea colloquy, finding that it adhered to the Crim.R. 11 requirements, including that Wilder understood the nature of charges and possible penalties.  The court highlighted that highly competent counsel represented Wilder and that this was not Wilder's first experience with the criminal justice system or accepting a plea agreement.  The court agreed with the State that it appeared that Wilder merely changed his mind after pleading — it was a "change of heart."

{¶ 25} On this record, we find no abuse of discretion in the trial court's judgment denying Wilder's motion to withdraw his plea.  The record reveals that the trial court reviewed the change-of-plea hearing transcript, held a complete hearing on Wilder's motion to withdraw his guilty plea, and gave full and fair consideration to his request.  The trial court considered the relevant factors, including that Wilder was represented by two highly competent attorneys and that he received a full Crim.R. 11 hearing at which he unequivocally stated that he understood the nature of the charges, the effect of his plea, and that he wanted to enter into the plea, including the agreed-upon definite sentencing range, which Wilder knew at the time of his plea that the court would honor.  Accordingly, Wilder possessed all the pertinent information at the plea hearing that he needed to enter a knowing, intelligent, and voluntary plea.  After the court afforded Wilder multiple opportunities to speak with counsel and family, including a brief recess during the plea colloquy to address a question raised by his codefendant, Wilder did not express confusion, have any questions, or ask the trial court to clarify or further explain his

rights, waiver of those rights, nature of the offenses, effects of the plea, or potential penalties. In fact, unlike his codefendant Hughey, Wilder wanted to take the plea, but because the offer was contingent on Hughey also accepting the plea, he felt forced to go forward with trial. When Hughey changed his mind, Wilder received the result he wanted.

{¶ 26} Finally, regarding Wilder's argument that the court did not consider his claim of actual innocence, we note that this court has repeatedly held that "[a] defendant's protestations of innocence are not sufficient grounds for vacating a plea that was voluntarily, knowingly, and intelligently entered." *Heisa*, 2015-Ohio-2269, at ¶ 23 (8th Dist.), citing *State v. Minifee*, 2013-Ohio-3146, ¶ 27 (8th Dist.). "'By inference, all defendants who request a withdrawal of their guilty plea do so based upon some claim of innocence. . . . A mere change of heart regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a guilty plea.'" *State v. Bloom*, 2012-Ohio-3805, ¶ 13 (8th Dist.), quoting *State v. Abdelhag*, 1997 Ohio App. LEXIS 3394, *11 (8th Dist. July 31, 1997).

{¶ 27} Our review of the record reveals that Wilder did not claim innocence at any time during the plea negotiations or during the plea colloquy. In fact, in his motion to withdraw his plea and during the subsequent hearing, he did not offer any specific defense or fact revealing innocence. This was discussed when addressing the State's desire to introduce video, ballistic, and DNA evidence, contending that the State's evidence could not be used to rebut any claim of innocence because no

evidence of innocence was presented. Accordingly, the trial court could not consider Wilder's claim of actual innocence without something to consider.

{¶ 28} Rather, the record shows that Wilder's conversation with the court during the motion hearing only focused on the potential sentence and whether the State was dictating the court's role in sentencing. It appears from our review of the record that Wilder's motivation to withdraw his plea was merely a change of heart.

{¶ 29} Based on the foregoing, this court finds that the trial court did not abuse its discretion in denying Wilder's presentence motion to withdraw his plea. The assignment of error is overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

MICHAEL JOHN RYAN, P.J., and
JILL FLAGG LANZINGER, J.,* CONCUR

(*Sitting by Assignment:  Judge Jill Flagg Lanzinger, of the Ninth District Court of Appeals.)