[Cite as *State v. Ponzie*, 2026-Ohio-655.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                      No. 115172

    v.                                          :

RAHMEAN PONZIE,                         :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 26, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694361-C

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Andrew Boyko, Assistant Prosecuting
Attorney, *for appellee*.

Christopher M. Kelley, *for appellant*.

MICHAEL JOHN RYAN, P.J.:

{¶ 1} Defendant-appellant Rahmean Ponzie ("Ponzie") appeals from his judgment of conviction, which was entered after his guilty plea to discharge of a firearm on or near prohibited premises, felonious assault, and criminal damaging or endangering. After a review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

{¶ 2} Because this case involved a guilty plea — as opposed to a trial — the facts of the case are not completely developed but, based on video evidence presented by plaintiff-appellee the State of Ohio at sentencing and the record, are set forth as follows.

{¶ 3} The incident giving rise to the case occurred on July 29, 2024, near and on the property surrounding St. Malachi Church on Cleveland's west side. The record reflects that St. Malachi Church hosted numerous community outreach programs for the underserved population in the neighborhood; one such program was a weekly meal.

{¶ 4} Ponzie lived in an apartment complex near the church. On the day in question, Ponzie and a codefendant, Randall Russell ("Russell"), were at the parking lot in the front of Ponzie's apartment complex when they were approached by another codefendant, Richo Samuels, Jr. ("Samuels"), and an unidentified individual. Samuels approached Ponzie with a firearm and robbed Ponzie of a backpack. Russell (who was with Ponzie) then approached Samuels and retrieved the backpack; Russell had a gun, which he extended toward Samuels during the encounter. The four — Ponzie, Russell, Samuels, and the unidentified person — interacted for several minutes, with the backpack changing hands several times. The backpack was ultimately dropped on the ground, retrieved by Russell, and returned to Ponzie. Both Samuels and Russell had guns drawn during the entire interaction.

{¶ 5} After the encounter, Ponzie walked back to the apartment complex and Samuels and the unidentified person walked in the direction of St. Malachi Church. Ponzie then returned to the parking lot of his apartment complex, and he now had an AR-style rifle in his hand. Ponzie got into a vehicle that was registered to his brother. Ponzie was in the driver's seat and he had two passengers: Russell and an individual named George Toney ("Toney"). Ponzie drove the vehicle in the direction of St. Malachi Church.

{¶ 6} Shortly thereafter, Ponzie, Russell, and Toney arrived at St. Malachi Church and Ponzie parked the vehicle in front of the entrance for the church's community outreach programs; the church was hosting a community meal at the time. Samuels was outside the church talking to an individual, codefendant Jermaine George ("George"); neither of them had weapons visible. Ponzie and Russell got out of their vehicle; both had weapons (Ponzie had the rifle and Russell had a handgun), which they pointed toward Samuels and began firing.

{¶ 7} After opening fire, Ponzie and Russell ran back to their vehicle, this time with Russell driving, Ponzie in the front passenger seat, and Toney in the rear passenger seat. As Russell drove away, Samuels retrieved and drew his firearm, walked in the direction of Ponzie's vehicle, and fired multiple shots in the direction of the vehicle. Toney, the backseat passenger in Ponzie's vehicle, was struck by Samuels's gunfire.

{¶ 8} In August 2024, a Cuyahoga County Grand Jury returned a 14-count indictment relative to this incident. Four individuals were indicted: Ponzie, Russell,

Samuels, and George. Ponzie was charged with two counts of discharge of a firearm on or near prohibited premises, with one- and three-year firearm specifications and forfeiture of a weapon specifications (Counts 3 and 4, felonies of the first degree and third degree, respectively); three counts of felonious assault, felonies of the second degree, with one- and three-year firearm specifications (Counts 5, 6, and 7); and criminal damaging or endangering, a misdemeanor of the first degree (Count 11).

{¶ 9} Ponzie was a named victim of Count 1, which charged Samuels and George with aggravated robbery; Count 2, which charged Samuels and George with robbery; and Count 8, which charged Samuels with felonious assault.

{¶ 10} The trial court declared Ponzie indigent and appointed counsel to represent him. However, several days later, Ponzie retained an attorney. A February 18, 2025 trial date was set; the case did not go to trial on that date because of defense counsel's unavailability, however. On March 10, 2025, defense counsel filed, at Ponzie's behest, a motion to withdraw as counsel. Counsel stated in the motion that Ponzie "indicated aggressively and unequivocally that he does not want the undersigned to represent him any longer." The trial court granted counsel's motion to withdraw and appointed substitute counsel on March 20, 2025.

{¶ 11} The trial court held a hearing on April 3, 2025, at which it informed the parties and counsel that trial was set for April 7, 2025, and it intended to proceed on that date. The State placed a plea offer on the record and Ponzie rejected the offer. Ponzie indicated his dissatisfaction with his attorney and requested new counsel. Defense counsel informed the trial court that he had a meeting with Ponzie

the day before (when he learned of the State's offer) to discuss the offer with Ponzie and Ponzie did not express dissatisfaction with him then; thus, counsel was "surprised" by Ponzie's request.

{¶ 12} The trial court inquired of Ponzie as to the reason for his request for new counsel. Ponzie told the trial court that counsel never went over discovery with him and was "talking crazy" to him, telling him he did not "give a s---." The trial court told Ponzie that counsel was "one of the best attorneys you can have. And if you're not satisfied with him, you're not going to be satisfied with anybody."

{¶ 13} Defense counsel informed the trial court that he had

spent quite a bit of time getting prepared to go to trial; because when I accepted the assignment it was my understanding that this trial date was going to be set in stone, so to speak. So I have done everything I can to get ready. I believe I have done what Mr. Ponzie has asked of me.

. . .

I will continue to work with him in order to continue to get ready and answer any questions that I possibly can before trial and during trial.

Tr. 9-10.

{¶ 14} The assistant prosecuting attorney stated that he provided defense counsel with discovery as soon as he was appointed as Ponzie's new attorney and that counsel had been "working diligently with me to prepare himself for this trial . . . ."

{¶ 15} The trial court informed Ponzie that it would not be appointing new counsel for him and that trial would start on April 7, 2025. The trial court provided Ponzie with a physical copy of the entirety of discovery produced by the State.

{¶ 16} The parties reconvened on April 7, 2025, for trial, at which time they informed the court that they had reached a plea agreement. The agreement consisted of Ponzie pleading guilty to Count 4, discharge of a firearm on or near prohibited premises, a felony of the third degree, and the forfeiture specification; Count 5, felonious assault, a felony of the second degree, and the three-year firearm specification; and Count 11, criminal damaging or endangering, a misdemeanor of the first degree. The remaining counts and specifications against Ponzie (i.e., Counts 3, 6, and 7) as well as the one- and three-year firearm specification attendant to Count 4 and the one-year firearm specification attendant to Count 5 were dismissed.

{¶ 17} The record reflects that the plea agreement was "packaged" with a plea agreement for codefendant Russell.[1]

{¶ 18} The trial court engaged in a plea colloquy with Ponzie, questioning him, among other Crim.R. 11 requirements, as to whether he (1) was satisfied with his counsel's representation of him; (2) understood that he would be "pleading to an offense that requires the Court to impose an indefinite sentence"; (3) understood that he would be receiving "a minimum for that offense as well as a maximum"; and (4) understood that, with the gun specification, the minimum total prison sentence he could receive would be five to six years and the maximum total sentence he could

---

[1] This court has held that "a defendant is not deprived of due process where an offer of a plea bargain is conditioned on acceptance by codefendants." *State v. Darling*, 2017-Ohio-7603, ¶ 24 (8th Dist.), citing *State v. Hlavsa*, 2000 Ohio App. LEXIS 4885 (8th Dist. Oct. 19, 2000); *State v. Cray*, 1986 Ohio App. LEXIS 9344 (8th Dist. Dec. 18, 1986).

receive would be ten to 19 years. Ponzie answered that he understood all of the above. At the conclusion of all of its Crim.R. 11 advisements to Ponzie, the trial court asked Ponzie if he had any questions; Ponzie responded that he did not. Ponzie pleaded guilty under the terms of the plea agreement, and the trial court accepted his plea as being knowingly, intelligently, and voluntarily made. The matter was referred for a presentence investigation, and sentencing was set for May 8, 2025.

{¶ 19} On April 29, 2025, Ponzie, pro se, filed a motion for substitute counsel and a motion to withdraw his plea. In these filings, Ponzie claimed his counsel was ineffective for advising him to plead guilty when he had a viable self-defense claim. Ponzie's counsel, at Ponzie's insistence, also filed a motion to withdraw the plea. In the motion, counsel stated that Ponzie wished to withdraw his plea "in part because he entered into it without a full understanding of the evidence in the case."

{¶ 20} The trial court held a hearing on Ponzie's request to withdraw his plea on May 8, 2025, prior to sentencing. The trial court heard from Ponzie, who stated the following:

> Well, basically when [defense counsel] went over the plea agreement with me, he never let me know that I still can go to trial, but he basically - - the way he was explaining it to me that if my co-defendant [Russell] was to come here to take a plea deal, which would put me in the position where I would have to take [it] too, he never told me that I didn't have to take it and I could go to trial, so I felt a little misled because he knew I wanted to go to trial. I feel like I've got a right to tell my side of the story to be heard too.

Tr. 28.

{¶ 21} The assistant prosecuting attorney confirmed that Ponzie and Russell's plea agreements were a "package" agreement. The assistant prosecuting attorney informed the court that it had worked with defense counsel in the past and was confident that he "did a fine job of counseling Mr. Ponzie and explaining the avenues that he had whether . . . he wanted to take the plea or move forward." The State indicated that it provided defense counsel with full discovery as soon as counsel was appointed to represent Ponzie. The State further noted that the trial court engaged in a lengthy plea colloquy with Ponzie, which included advising him of his right to have a trial. The trial court denied Ponzie's motion to withdraw his plea, stating, "After reviewing the motions and considering the statements made today and after a full and fair consideration, I do believe the Court has fully complied with Criminal Rule 11 . . . ." The trial court then sentenced Ponzie to an aggregate prison term of five to six years. Ponzie appeals, raising the following two assignments of error for our review:

I. Appellant's plea was not made knowingly, intelligently, and voluntarily due to the trial court's failure to comply with Crim.R. 11.

II. The trial court erred in denying Appellant's presentence motion to withdraw plea.

**Law and Analysis**

{¶ 22} In his first assignment of error, Ponzie contends that his plea was not knowingly, intelligently, and voluntarily made because "the trial court completely failed to explain how an indefinite sentence would be calculated under Reagan Tokes."

{¶ 23} A defendant's plea must be entered knowingly, intelligently, and voluntarily for the plea to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). The purpose of Crim.R. 11(C) is to require the trial court to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Poage*, 2022-Ohio-467, ¶ 9 (8th Dist.). Under Crim.R. 11(C)(2), a trial court shall not accept a guilty plea in a felony case without first addressing the defendant personally and doing all the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty . . . and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 24} "When a criminal defendant seeks to have his [or her] conviction reversed on appeal, the traditional rule is that he [or she] must establish that an

error occurred in the trial court proceedings and that he [or she] was prejudiced by that error." *State v. Dangler*, 2020-Ohio-2765, ¶ 13. A limited exception exists when the trial court fails to explain the constitutional rights waived by the defendant when pleading guilty as outlined in Crim.R. 11(C)(2)(c). *Id.* at ¶ 14. A trial court's complete failure to comply with a portion of Crim.R. 11(C) also eliminates the defendant's burden to show prejudice. *Id.* at ¶ 15.

{¶ 25} "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his [or her] plea vacated unless he [or she] demonstrates he [or she] was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16. This includes instances where the trial court fails to fully cover the "nonconstitutional" aspects of the plea colloquy. *Id.* at ¶ 14, citing *State v. Veney*, 2008-Ohio-5200, ¶ 17 (distinguishing the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b) from the constitutional rights notifications required by Crim.R. 11(C)(2)(c)). "[T]he questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Dangler* at ¶ 17.

{¶ 26} Ponzie contends that his plea was not knowingly, intelligently, and voluntarily entered into because the trial court failed to explain how an indefinite sentence would be calculated under the Reagan Tokes Law.

{¶ 27} During its plea colloquy with Ponzie, the trial court questioned him as to whether he understood that he would be "pleading to an offense that requires the Court to impose an indefinite sentence" and that he would be receiving "a minimum for that offense as well as a maximum." The trial court further inquired of Ponzie as to whether he understood that, with the gun specification, the minimum sentence he could receive would be five to six years and the maximum sentence would be ten to 19 years. Ponzie responded that he understood these advisements.

{¶ 28} Although the trial court did not explain to Ponzie how it arrived at its calculations under the Reagan Tokes Law, it nonetheless informed him of the minimum and maximum times he could receive. On this record, even if the trial did not fully comply with Crim.R. 11(C)(2)(a), we cannot say that the trial court completely failed to comply with the rule. *See State v. Hollowell*, 2024-Ohio-4581, ¶ 17 (8th Dist.). Thus, Ponzie's burden to show prejudice is not eliminated. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Dangler*, 2020-Ohio-2765, at ¶ 16, quoting *Nero*, 56 Ohio St.3d at 108.

{¶ 29} We are not persuaded by Ponzie's reliance on *State v. Amin*, 2023-Ohio-3761 (11th Dist.). In *Amin*, the trial court did not convey *any* information to the defendant regarding the maximum penalty involved and relied on the State's deficient statement. *Id*. at ¶ 13. The appellate court found the plea to be invalid based on deficiencies in the plea colloquy. This case is distinguishable from *Amin*. The trial court here informed Ponzie of the maximum penalty involved. Thus, the

alleged failure — to the extent that it was one — was not of the type that excuses Ponzie from the burden of demonstrating prejudice.

{¶ 30} Ponzie's brief rests on the assertion that he is not required to show prejudice; he makes no claim that had he been advised in more detail about how the trial court calculated his exposure under the Reagan Tokes Law he would not have pleaded guilty. He therefore has failed to demonstrate the required prejudice.

{¶ 31} The first assignment of error is overruled.

{¶ 32} In his second assignment of error, Ponzie challenges the trial court's decision to deny his presentence motion to withdraw his plea.

{¶ 33} A presentence motion to withdraw a guilty plea should be freely and liberally granted, and there is a presumption in favor of permitting a presentence plea withdrawal. *State v. Barnes*, 2022-Ohio-4486, ¶ 21, citing *State v. Xie*, 62 Ohio St.3d 521 (1992). "This is the presumption from which all other considerations must start." *Id.* However, "a defendant does not have an absolute right to withdraw guilty plea," and "denying a defendant's motion to do so has been upheld in various circumstances[.]" (Citations omitted.) *Id.* at ¶ 22. A trial court must conduct a hearing to determine whether there is "a reasonable and legitimate basis" for withdrawing the plea, and the decision to grant or deny the motion "is within the sound discretion of the trial court." *Xie* at paragraphs one and two of the syllabus. Absent an abuse of discretion, the trial court's decision must be affirmed. *Id.* at 527. "A court exercising its judgment, in an unwarranted way, in regard to a matter over

which it has discretionary authority" constitutes an abuse of discretion. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 34} Courts have identified nine nonexhaustive factors for evaluating a presentence motion to withdraw a guilty plea. *State v. Wilder*, 2025-Ohio-3075, ¶ 20 (8th Dist.). Those factors include whether (1) the defendant was represented by competent counsel, (2) the defendant was given a full Crim.R. 11 hearing before entering his or her plea, (3) the defendant is given a complete hearing on the motion to withdraw, (4) the record reveals that the court gave full and fair consideration to the plea-withdrawal request, (5) the motion was made in a reasonable time, (6) the motion stated specific reasons for withdrawal, (7) the record shows that the defendant understood the nature of the charges and the possible penalties, (8) the defendant had evidence of a plausible defense, and (9) the State would be prejudiced by permitting the defendant to withdraw his or her guilty plea. *Wilder* at ¶ 20-21, citing *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist. 1980), paragraph three of the syllabus; *State v. Fish*, 104 Ohio App.3d 236 (1st Dist. 1995); *Barnes* at ¶ 32 (Brunner, J., concurring).

{¶ 35} The record demonstrates that Ponzie was represented by competent counsel. The trial court stated that it was familiar with counsel and called him "one of the best." The assistant prosecuting attorney informed the trial court that he provided complete discovery to counsel as soon as he was appointed and the two had been working together in preparation for trial. Indeed, when Ponzie sought to have counsel withdraw at the April 3, 2025 hearing, counsel told the court that he

was "surprised" because he met with Ponzie the day before and Ponzie did not express his dissatisfaction with him then. Further, counsel told the trial court that he would continue to work with Ponzie to prepare for trial.

{¶ 36} Despite Ponzie's assertion to the contrary, the record demonstrates that the trial court afforded him a thorough Crim.R. 11 hearing prior to accepting his guilty plea. The record also demonstrates that Ponzie understood the nature of the charges and the possible penalties. Further, as admitted by Ponzie, he was afforded a hearing on his request to withdraw his plea.

{¶ 37} We are not persuaded by Ponzie's contention that the trial court did not give full and fair consideration to his withdrawal request because it did not specifically comment on his self-defense claim, but, rather, only mentioned that it had fully complied with Crim.R. 11. There were two written motions filed requesting withdrawal of the plea (one by Ponzie, pro se, and one by counsel), the State filed a brief in opposition, and the State, defense counsel, and Ponzie presented arguments at the hearing.[2] In denying the motion, the trial court stated that it had given "full and fair consideration" to the briefing on the matter and considered the arguments made at the hearing. Implicit in the trial court's reliance that Ponzie was afforded a complete Crim.R. 11 hearing was the notion that Ponzie understood that by pleading guilty he was waiving his right to attempt to raise a self-defense claim. There was no new evidence in this case that was discovered by Ponzie after his plea that would

---

[2] Notably, although Ponzie raised self-defense as a ground for withdrawing his plea in his written pro se motion, he did not assert self-defense at the hearing and his counsel did not assert it in either his written motion to withdraw the plea or at the hearing.

constitute newly discovered evidence to support a self-defense claim — he did not have evidence of a plausible defense.

{¶ 38} Finally, regarding prejudice to the State, the record demonstrates that some of the victims of, and witnesses to, Ponzie's crimes were volunteers at St. Malachi Church and innocent bystanders. The assistant prosecuting attorney described the toll this incident has had on the church — including a pause on the weekly meal service and reduction in other services. The victims and witnesses "do not want any further inconvenience on their lives. They want to put this behind them. I think most people involved want to put this completely behind them, but it's something that will stay with them." The record demonstrates the prejudice that would have inured to the State by allowing Ponzie to withdraw his plea.

{¶ 39} The second assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
EILEEN A. GALLAGHER, J., CONCUR