[Cite as *State v. Jordan*, 2026-Ohio-1562.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

    v.                                    :

AIRIK KAHLEAD JORDAN,          :

    Defendant-Appellant.        :

No. 115625

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-691301-B

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Adrienne Linnick, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant*.

EMANUELLA D. GROVES, P.J.:

{¶ 1} Defendant-appellant Airik Kahlead Jordan ("Jordan") appeals the decision denying his motion to withdraw his guilty pleas. For the reasons that follow, we affirm the decision of the trial court.

**Factual and Procedural History**

{¶ 2} In April 2024, a grand jury convened and issued an indictment charging Jordan in the August 15, 2023 murder of 14-year-old T.M., and the attempted murder of 13-year-old J.H. as follows: aggravated murder in violation of R.C. 2903.01(A), an unclassified felony (Count 1); aggravated murder in violation of R.C. 2903.01(B), an unclassified felony (Count 2); murder in violation of R.C. 2903.02(A), an unclassified felony (Count 3); murder in violation of R.C. 2903.02(B) (Count 4); kidnapping in violation of R.C. 2905.01(A)(3), a felony of the first degree (Count 5); felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree (Count 6); felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree (Count 7); discharge of firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), a felony of the first degree (Count 8); attempted murder in violation of R.C. 2923.02/2903.02(A), a felony of the first degree (Count 9); felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree (Count 10); felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree (Count 11); and kidnapping in violation of R.C. 2905.01(A)(3), a felony of the first degree (Count 12). Each count included one- and three-year firearms specifications. [1]

---

[1] The indictment also charged codefendants, Reginald Perkins and Ian Price.

{¶ 3} On August 20, 2025, the State and Jordan entered into a plea agreement in Cuyahoga C.P. No. CR-25-691301-B.[2] Pursuant to the plea agreement the State would dismiss the remaining charges if Jordan agreed to plead guilty to Count 3, amended to involuntary manslaughter in violation of R.C. 2903.04(A) and the three-year firearm specification; to Count 5 as charged, kidnapping with the one-year firearm specification and with the State amending the count to include both victims; and Count 8, discharge of a firearm on or near prohibited premises amended to a felony of the third degree and the one-year firearm specification. The plea was also contingent upon an agreed recommended sentence of 20 to 30 years with no early release, not including Reagan-Tokes time, and agreements that the offenses were not allied offenses of similar import and that Jordan would have no contact with the surviving victim.

{¶ 4} After the State described the plea deal, the trial court questioned Jordan and his counsel in preparation for taking the plea. The trial court asked Jordan's attorneys the status of the case. They represented that "if" Jordan pleaded guilty today it would be knowingly, intelligently, and voluntarily entered. In response to introductory questions, Jordan told the court his name and age: Airik Kahlead Jordan, 22, and that he completed school through the tenth grade and that he had not obtained a General Education Development (GED) certificate.

---

[2] Jordan's plea agreement encompassed three additional cases that are not the subject of this appeal.

{¶ 5} The court then asked Jordan whether he was under the influence of any drug, alcohol, or medication that would prevent him from either understanding what was happening or prevent him from entering a plea. In response, Jordan told the court that he was intoxicated from smoking "K2" or "spice" while in the jail. Based on that information, the trial court immediately stopped the proceedings and continued the case to the following day.

{¶ 6} The next day the trial court sought clarification on Jordan's name because the indictment was under "Kahlead Jordan." Jordan informed the court that Kahlead was his middle name, and his first name was Airik. The court then inquired how Jordan was feeling and whether he ingested any "K2" since yesterday's hearing. Jordan denied smoking "K2" and denied being under the influence of any substance that would impair his ability to understand the proceedings or prevent him from entering a plea. The court then asked if he understood what was happening today. In response, Jordan indicated, "I'm trying to get a better understanding." When asked to specify, Jordan questioned how much time was being offered. The court explained the plea deal and that the sentence would be between 20 and 30 years with no judicial release. Jordan then questioned the meaning of judicial release. The trial court discussed the issue in greater detail.

{¶ 7} The trial court then asked Jordan if he had any other questions. Jordan asked the court whether he would be able to tell the court on the record what happened at the scene. The trial court responded "no," describing in detail why the court would not consider that statement prior to the plea. The court noted that if

Jordan did not feel he was guilty of the charges, he could proceed to trial to allow a jury to make that determination. After listening to the trial court's explanation, Jordan inquired when he would be able to tell what happened if he were to go to trial. After further explanation, Jordan asked whether he could try the case to the bench. The trial court informed him that a bench trial was always a possibility. Finally, Jordan indicated that he did not have any additional questions. The trial court asked if Jordan wished to proceed with the plea or talk to his lawyers. Jordan asked if he could talk with his lawyers.

{¶ 8} After a recess, Jordan returned to the courtroom and indicated that he wanted to proceed with the plea. The trial court then engaged Jordan in a colloquy, in which the court asked Jordan whether he was entering the plea because he was "in fact" guilty. Jordan responded "yes" to that question in relation to all the charges.

{¶ 9} After accepting Jordan's pleas, the trial court inquired about sentencing. The defense represented that they needed a few days to secure witnesses on Jordan's behalf and asked that the sentencing hearing proceed the following Wednesday, August 27, 2025.

{¶ 10} On August 26, 2025, Jordan filed a pro se motion to withdraw his pleas under Crim.R. 32. Jordan claimed that prior to the pleas his lawyers advised him that the prosecutor was a "beast and would find [Jordan] guilty regardless of any court session/proceeding." Further, he alleged he was told by his lawyers that they could not present a plausible defense and, therefore, Jordan needed to plead

guilty instead of going to trial. As a result of the foregoing, Jordan alleged that, despite being innocent, he entered his pleas out of fear and his pleas were not freely and voluntarily given. In support of his motion, Jordan cited case law arguing that a presentence motion to withdraw a guilty plea should be liberally granted, the court must hold a hearing, compliance with Crim.R. 11 does not excuse the court from holding a full hearing, and the trial court may not presume the State would be prejudiced if it granted the motion.

{¶ 11} At the sentencing hearing, the trial court addressed Jordan's motion to withdraw his pleas. Jordan's lawyers represented that they became aware of the motion that day and it was their understanding that Jordan wanted to address the court. Jordan reiterated his claims in the motion regarding the skill of the prosecutor, his innocence, his belief that he would be found guilty if he went to trial with his current representation, and his fears drove him to enter into the plea deal. The trial court pointed out that when Jordan was asked whether he was in fact guilty, he responded affirmatively. Jordan responded that he wanted to say "no," but his lawyers told him he had to say "yes." The trial court denied Jordan's motion noting that at the time of the pleas, the court was satisfied that Jordan made his pleas knowingly, intelligently, and voluntarily.

{¶ 12} During its statement to the court, the State noted that it had reviewed Jordan's phone calls from the jail after the plea hearing. The State represented that Jordan and his father spoke and Jordan admitted lying about ingesting "K2" in order to have more time to think about the plea deal.

{¶ 13} The trial court ultimately sentenced Jordan to 11 to 16 1/2 years on the involuntary-manslaughter charge and three years on the firearm specification; 11 years on the kidnapping charge and one year on the firearm specification; and 36 months on the firing a weapon in a prohibited place plus one year for the attached firearm specification. The trial court imposed the firearm specifications consecutively to one another for a total of five years, to be served prior to and consecutive to the underlying offenses, which were also imposed consecutively. Jordan's aggregate sentence was a 30 to 35 1/2 year term in prison.

{¶ 14} Jordan appeals and raises one assignment of error, as follows.

### Assignment of Error

The trial court erred when it denied [Jordan's] presentence motion to withdraw his guilty plea.

{¶ 15} Jordan argues that the trial court abused its discretion when it denied his motion to withdraw his guilty pleas. Jordan claims that the record reflects that the trial court's decision was "predetermined" and it did not fully consider his arguments in support of granting the motion.

{¶ 16} The decision to grant or deny a presentence request to withdraw a plea falls within the sound discretion of the trial court. *State v. Maddox*, 2017-Ohio-8061, ¶ 17 (8th Dist.), citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992), paragraph two of the syllabus. An abuse of discretion occurs when the court's conduct is "unreasonable, arbitrary or unconscionable." *State v. Hill*, 2022-Ohio-4544, ¶ 9,

quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 17} A defendant "does not have an absolute right to withdraw a plea prior to sentencing." *State v. Hines*, 2020-Ohio-663, ¶ 8 (8th Dist.). Nevertheless, when considering such a motion, the trial court must conduct a hearing to determine whether the defendant has "'a reasonable legitimate basis'" for withdrawing the plea. *Id.*, quoting *Xie* at 527. A full hearing is not required in all cases, rather "[t]he scope of [the] hearing . . . should reflect the substantive merits of the motion." *State v. Read-Bates*, 2020-Ohio-3456, ¶ 21 (8th Dist.), citing *State v. Robinson*, 2008-Ohio-4866, ¶ 24-25 (8th Dist.); *State v. Wittine*, 2008-Ohio-5745, ¶ 9 (8th Dist.), quoting *State v. Hall*, 1989 Ohio App. LEXIS 1602 (8th Dist. Apr. 27, 1989) ("[B]old assertions without evidentiary support simply should not merit the type of scrutiny that substantiated allegations would merit.").

{¶ 18} A court does not abuse its discretion when denying a motion to withdraw a guilty plea

> (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

*Maddox* at *id.*, quoting *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist. 1980), paragraph three of the syllabus.

{¶ 19} Additional factors include "(5) whether the motion was made timely; (6) whether the motion states specific reasons for withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was perhaps not guilty or had a complete defense, and (9) whether the State would suffer prejudice if the defendant is allowed to withdraw a plea." *Hines* at ¶ 10, citing *State v. Benson*, 2004-Ohio-1677, ¶ 9 (8th Dist.); *State v. Sellers*, 2007-Ohio-4523, ¶ 34 (10th Dist.); *State v. Moore*, 2012-Ohio-5734, ¶ 13 (8th Dist.).

{¶ 20} Moreover, when a trial court complies with Crim.R. 11, it "raises a presumption that a plea is voluntarily entered." *Read-Bates* at ¶ 17, citing *State v. McKissick*, 2018-Ohio-282, ¶ 23 (8th Dist.). When a defendant moves to withdraw that plea, he must rebut the "'presumption by demonstrating that the plea was infirm.'" *Id.,* quoting *Robinson*, 2008-Ohio-4866, ¶ 26 (8th Dist.).

{¶ 21} Jordan argues that there were several factors that supported the trial court granting his motion to withdraw his plea: (a) that his motion stated a reason for the withdrawal of the plea; (b) whether the defendant was "perhaps" not guilty; (c) whether the government would be prejudiced by withdrawal of the plea; (d) whether he was given a full and impartial hearing on the motion to withdraw; and (e) whether the trial court gave full and fair consideration to the motion. We will address each issue in turn. Initially, we note that the record does not reflect that the trial court addressed whether the State would be prejudiced if it granted Jordan's motion. Nevertheless, Jordan's other arguments fail.

{¶ 22} Next, we will consider whether Jordan was given a full and impartial hearing and whether the trial court gave full and fair consideration to the motion. Jordan characterizes the trial court's ruling as "predetermined" suggesting that the court made up its mind prior to any hearing. We disagree. Our review of the record shows that during the motion hearing, the trial court referenced the entire plea hearing, including the trial court's detailed discussions with Jordan describing his options prior to entering his pleas. Jordan had several questions about how he should proceed. The trial court answered each question in detail and, when necessary, afforded Jordan the opportunity to discuss any concerns with counsel. The trial court made a point, as we discuss below, to ensure that Jordan understood the ramifications of entering into a plea, including that he could proceed to trial, tell his version of events, and let the jury or the bench decide his guilt. Given the trial court's thorough colloquy with Jordan, the trial court determined that it only needed a brief conversation with Jordan to rule on the motion.

{¶ 23} With respect to whether the trial court fully considered Jordan's motion, we find that it did. The trial court has discretion to determine the scope of the motion hearing. *Read-Bates*, 2020-Ohio-3456, at ¶ 21 (8th Dist.). Jordan's claims were based on a change of heart. At the time of the plea hearing, he was aware of his belief in his own innocence and the potential consequences of entering guilty pleas. Jordan made the decision to plead guilty anyway. Jordan did not raise any new information, such as recently disclosed evidence; rather, he literally changed his mind between the plea and sentencing hearings. A mere change of heart is not

a sufficient basis to grant a motion to withdraw a guilty plea. *State v. Resto*, 2020-Ohio-4299, ¶ 22 (8th Dist.), citing *State v. Elliott*, 2016-Ohio-2637, ¶ 30 (8th Dist.), citing *State v. Hoyle*, 2016-Ohio-586, ¶ 31 (8th Dist.).[3]

{¶ 24} Based on the foregoing, we find that the scope of the trial court's hearing was sufficient given Jordan's motion and full and fair consideration was given to the motion.

{¶ 25} Next, Jordan argues that he asserted a basis for his desire to withdraw his guilty pleas. Specifically, he asserted that he was advised by counsel that taking the plea offer was in his best interest because of the skill of the prosecutor. Further, his attorney's assessment of his chances of success if he were to proceed with trial were low. Based on that advice, Jordan alleged he entered his pleas out of fear. Notably, Jordan claims he always professed his innocence. Thus, his decision to plead guilty was based on his understanding of his attorney's evaluation that he was unlikely to prevail at trial, even though he claimed to be innocent.

{¶ 26} However, "[c]laims that counsel recommended the plea agreement and pressured the defendant to accept a plea bargain are of limited weight where the plea was knowingly and voluntarily made." *State v. Lawhorn*, 2009-Ohio-3216, ¶ 23 (6th Dist.). In the instant case, Jordan expressed more than once that he

---

[3] Jordan argues that the language "mere change of heart" was created in the State's courts of appeals and is not found in Ohio Supreme Court cases. Nevertheless, he acknowledges that this court has held that a mere change of heart is not a sufficient basis for granting a motion to withdraw a guilty plea.

desired to tell his side of the story during the plea colloquy. When asked whether he could explain what happened before he entered his pleas, the trial court explained:

> Court: No. Thank you for asking. The answer is no. I don't want to make a decision based upon what you are suggesting is what happened. That is a decision — my issue right here is guilt or innocence, are you guilty of a charge of involuntary manslaughter. If you don't feel you're guilty of that charge, that's fine. That's what we have trials for. You let the jury make that decision.

> Court: The time, if you will — let me just explain. If we were to continue through this plea process and go through it all like we've been trying to do, advise you of all your rights and all your possibilities, and assuming we completed that, I accept your plea of guilt, we would set it for sentencing.

{¶ 27} The trial court then addressed what would happen at sentencing and that Jordan would be permitted to speak in due course. After this discussion, Jordan asked when he would be able to tell his side of the story if he proceeded with trial. The trial court responded by explaining the order of trial and when he would be permitted to testify, if he chose to do so. After this discussion, Jordan was asked and received an opportunity to speak to his lawyers. When he returned, he told the trial court he wished to proceed with his guilty plea.

{¶ 28} Based on the foregoing, Jordan evaluated his chances, understood the consequences of pleading guilty, and entered pleas of guilty. He then changed his mind. He does not allege that he received new information, rather he argues he made the initial decision to plead guilty out of fear. While Jordan's motion did present a reason for his desire to withdraw his pleas, that reason was a mere change of heart and was insufficient. *Resto*, 2020-Ohio-4299, ¶ 22 (8th Dist.).

{¶ 29} Finally, we consider whether Jordan was "perhaps" not guilty and whether that claim required the trial court to grant his motion. According to his motion, Jordan always maintained his innocence. Jordan's motion, however, did not give a basis for that assertion. During his statement at sentencing, he alleged that he did not kill T.H., but that he knew who did. The State presented a video of the incident and stated that it showed Jordan shooting T.H. as he was running away, then walking up to T.H. and shooting him in the head.[4] A defendant's claims of innocence are insufficient "'grounds for vacating a plea that was voluntarily, knowingly, and intelligently entered.'" *State v. Wilder*, 2025-Ohio-3075, ¶ 26 (8th Dist.), quoting *State v. Heisa*, 2015-Ohio-2269, ¶ 23 (8th Dist.), citing *State v. Minifee*, 2013-Ohio-3146, ¶ 27 (8th Dist.). Jordan understood that he had the option to proceed to trial. He made the decision to plead guilty, despite his innocence after evaluating the advice of counsel. Accordingly, his claim of innocence was insufficient grounds to support his motion to withdraw his plea.

{¶ 30} Based on the foregoing, the trial court did not abuse its discretion when it denied Jordan's motion to withdraw his guilty pleas and the sole assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[4] The video was not introduced into evidence, so we only provide the State's description of the evidence without comment.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS;
MARY J. BOYLE, J., CONCURS (WITH SEPARATE OPINION)

MARY J. BOYLE, J., CONCURRING:

{¶ 32} I concur with the majority opinion. I write separately as I did in *State v. Cox*, 2026-Ohio-560 (8th Dist.), to emphasize that I agree with Justice Brunner's concurring opinion in *State v. Barnes*, 2022-Ohio-4486, and believe that "[t]he nine-factor analysis should not overshadow the exercise of judicial discretion needed to analyze a presentence plea withdrawal in accordance with the basic principles established by [*State v. Xie*, 62 Ohio St.3d 521 (1992)] and Crim.R. 32.1." *Id.* at ¶ 40 (Brunner, J., concurring).

{¶ 33} *Xie* was decided 30 years ago and, as Justice Brunner stated, the "nine-factor test" "has overshadowed the basic principles established by *Xie* and Crim.R. 32.1." *Id.* at ¶ 38 (Brunner, J., concurring). In *Xie*, the Ohio Supreme Court found that presentence motions to withdraw a guilty plea "should be freely and liberally granted." *Id.* at 527. "Freely and liberally granting the defendant's

presentence motion to withdraw his guilty plea requires the trial court to exercise discretion in its judgment. And that judgment should not be slighted by making a trial court essentially answer yes-or-no questions to come up with a weighted score for a matter that requires the court to engage in human observation, reflection on accumulated experience, and discretion that only a trial court is in the position to exercise to reach a final judgment on the matter." *Barnes* at ¶ 41 (Brunner, J., concurring).

{¶ 34} Applying the basic principles established by *Xie* and Crim.R. 32.1 to this case, without weighing the nine factors, leads to the conclusion that Jordan's presentence motion to withdraw his guilty plea was properly denied.

{¶ 35} Therefore, I concur with the majority opinion and continue to offer the above additional suggestions for consideration.